# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DONNAMARIE KAMINSKY | ) | CASE NO.: 5:19 cv 00020 |
| 150 Twin Oaks Road | ) | |
| Akron, Ohio 44313 | ) | JUDGE SARA LIOI |
| | ) | |
| Plaintiff, | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| v. | ) | **(Jury Demand Endorsed Herein)** |
| | ) | |
| ROBERT WILKIE, SECRETARY | ) | |
| U.S. DEPARTMENT OF VETERANS | ) | |
| AFFAIRS | ) | |
| 810 Vermont Avenue NW | ) | |
| Washington, DC 20420 | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Now comes DonnaMarie Kaminsky ("Plaintiff"), by and through the undersigned counsel, and for her Complaint alleges as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., the Age Discrimination in Employment Act ("ADEA"), and the Constitution of the United States of America.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division. This lawsuit is being filed in the Eastern Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred in Summit County, which is within the Eastern Division.

3. On or about August 22, 2016, Plaintiff filed a formal complaint, VA Case No. 200H-0541-2016104236, for violations that included hostile work environment/harassment (non-sexual) and discrimination based on age and disability (Exhibit 1).

4. On September 1, 2017, Plaintiff filed a formal complaint, VA Case No. 200H-00541-2017103832, for violations that included reprisal for prior EEO activity (Exhibit 2).

5. On October 5, 2018, the Administrative Law Judge issued an Order of Dismissal. (Exhibit 3). The Order of Dismissal specifically states: "The Agency should issue the final decision based on the record within 60 days pursuant to 29 C.F.R. §1614.110(b). *Id*.

6. The Agency's EEO was required to issue the final decision on or before December 4, 2018.

7. The Agency's EEO has not yet issued a final agency determination, and it has surpassed its 60-day statutory deadline to do so under 29 C.F.R. §1614.110(b).

8. Because the Agency has surpassed its 60-day deadline, Plaintiff is entitled to file her complaint before this Court. 29 C.F.R. §1614.110(b).

9. In her Agency Complaints, Plaintiff exhausted all of her administrative remedies as to all the matters discussed herein.

## PARTIES

10. Plaintiff reincorporates by reference the allegations set forth above as if fully rewritten herein.

11. Plaintiff, a 74-year-old female, filed charges with the Department of Veterans Affairs Equal Employment Opportunity Commission regarding Defendant's alleged discriminatory conduct and retaliation on or about August 22, 2016 and September 1, 2017.

12. Defendant Robert Wilkie is the Secretary of the Department of Veterans Affairs, an agency of the United States of America and operates the Cleveland Veterans Administration at 1240 East Ninth Street Cleveland Ohio 44199.

13. At all times relevant hereto, the Department of Veterans Affairs was Plaintiff's employer.

**FACTS**

14. Plaintiff reincorporates by reference the allegations set forth above as if fully rewritten herein.

15. Plaintiff was a GS 1712 Training Specialist with Grief Education/Bereavement Specialist credentials. Plaintiff served in this position for 14 years.

16. Plaintiff's position was defined/described in the Medical Center Policy 122-014, dated July 24, 2014.

17. Plaintiff has a Master's Degree and professional credentials in Clinical Pastoral Education (CPE), Thanatology, Fellow – FT:  Educator and support in Dying, Death, Bereavement, and Certified Spiritual Director – SD, Grief Recovery Spegialist/ Bereavement Specialist. All certifications and credentials are from recognized, professional organizations.

18. Debra King ("King") was appointed new Assistant Chief to Social Work Service in May 2016.

19. Prior to King's appointment, Plaintiff served in her position as the only VA Contract Home Hospice Coordinator since May 2004, a total of 12 years.

20. Plaintiff was the only person who served in this capacity.  In fact, when offered the position in 2004 from then Chief of Social Work Service, Joseph Aquilina and Assistant

Chief, Dale Goldstein, they told Plaintiff that there was no one in this position, and they would like her to develop the program.

21. During those 12 years, Plaintiff's Annual Performance Evaluations were "Excellent" or "Outstanding."

22. The Veterans whom Plaintiff served and their families wrote thank you notes to Plaintiff's previous supervisors and the Medical Center Director, Susan Fuehrer for the compassionate care that she provided to them.

23. Plaintiff's relationship with her previous supervisors (Dale Goldstein & Chris Esmurdoc) was very good.

24. Plaintiff's duties included the following:  visiting Veterans and their family at their residence; confirming that the community hospice agency had made contact with the Veteran; confirming that the Veteran understood the role/responsibility of the community hospice agency; confirming that the Veteran knew how to contact the community hospice agency; answering all questions from both the Veteran and his/her family members regarding the home hospice/end-of-life process; assuring the Veteran that he/she was still an active patient of the VA and could return to the VA for any medical needs and could revoke hospice care at any time, if he/she so chose – upon consultation with his/her primary care physician.

25. Further, Plaintiff's role was to provide emotional/spiritual support to both the Veteran and to the family members by answering their questions, providing information about care-giving, self-care, and providing additional resources.

26. Plaintiff also facilitated conversations (at the initiation of the Veteran and/or family) about military culture issues; ways to convey information about dying and death to

younger children (and provided resources for this); and offered the gentle support of presence – someone to whom the Veteran or family member could turn when feeling overwhelmed or uncertain, and provide direction about the "next step."

27. Plaintiff fostered close collaboration with the community hospice agency staff.

28. At no time during Plaintiff's 14 years of service did she engage in any type of "social work activity" that required a license.

29. Grief education and bereavement support requires credentials, but no licensure.

30. From the beginning of this position, a private office was provided to Plaintiff so that she could see Veterans at Wade Park and their families, as well as staff seeking grief or bereavement support.

31. The facility psychiatrists, psychologists, and mental health social workers, as well as staff in the Domiciliary referred Veterans to Plaintiff on a regular basis to provide these supportive services.

32. When King became Assistant Chief of Social Work Service in May 2016, Plaintiff was 71 years of age with no intention of retiring, and had been very open with social work staff about her intention not to retire.

33. King's first meeting with Plaintiff (which Plaintiff had requested to discuss medical leave) occurred on May 19, 2016.

34. When Plaintiff attempted to open the conversation with pleasantries, King interrupted Plaintiff. King's tone was belligerent and hostile. King pointed a finger at Plaintiff accusingly saying: "I'm going to change your job; your work hours; your work location. I'm going to change everything about your job.  You are no longer going to work alone. You will work with somebody, I guarantee you!"

35. King also stated that when Plaintiff had a late appointment, King would not authorize comp time - King would change Plaintiff's tour of duty hours for that day (not taking into consideration that Plaintiff would have put in several hours earlier).

36. King further stated that there was a Hospice Oversight Committee that was making changes to how hospice was delivered; but King refused to give Plaintiff the names and positions of the persons on the committee.

37. King stated that the Committee and Chief of Staff (then Dr. Murray Altose, now retired) were looking into how VA Contract Hospice Funds were being used; and wanted to divert them to different use and that Veterans who had Medicare and/or Third Party insurance would be required to use Medicare instead of the VA Contract benefit – so the facility could save dollars on the VA Home Hospice funds.

38. Only after King informed Plaintiff of all the changes she was going to make to her position, did she ask her what her job entailed. However, Plaintiff was so shaken by her opening comments and unexpected belligerence and hostility toward her that it was difficult for Plaintiff to respond to her.

39. Throughout Plaintiff's responses, King interspersed accusatory comments, with no foundation. Towards the end of the conversation, since Plaintiff had requested the meeting to discuss medical leave, she interjected that the reason she had requested the meeting was to request and explain her need for medical leave, and requested again if she could address that issue.

40. Again, in a hostile tone, King looked at the clock above Plaintiff and replied: "If you can do it in 10 minutes or less, go ahead; I have another appointment at 11:30."

41. King expressed no concern or understanding of Plaintiff's situation, nor did she permit her to fully explain her medical disability. King's response was curt and dismissive: "If you have the time, ok."

42. From that day forward, King was intentional, deliberate and methodical about changing the duties of Plaintiff's position and creating a hostile work environment.

43. Since there were no performance issues on the table, it was clear that King wanted Plaintiff out of her position and would continue to do anything to force her to retire or leave the position.

44. Plaintiff was not included in any discussions about how or why her position was being changed.

45. There was a "work group" comprised of supervisor Mary Ellen Lanning, Jill Dunmire-Siddiq, Jason Gatliff and King whose stated purpose was to "redesign the VA Contract Home Hospice program."

46. Plaintiff was not invited to participate in the "work group" until November 16, 2016, under the "guise" of creating a "home hospice template."

47. When Plaintiff arrived at the one and only meeting to which Plaintiff was invited, the "home hospice template" had already been completed in draft form.

48. Any suggestion Plaintiff made was voted down by Lanning, Dunmire-Siddiq, and Gatliff.

49. On June 10, 2016, King and then Chief Joseph Aquilina informed Plaintiff that they were removing her from her office in the Blind Rehab section of the Tower.

50. They informed Plaintiff that she needed to move all the office equipment and supplies herself (although King had been informed that Plaintiff had a spinal injury).

51. King refused to initiate a Move Matrix, which is the ordinary way employees are moved from one location to another.

52. Even after requesting a second time that King complete a Move Matrix, informing her again that Plaintiff had a spinal injury that would preclude her from moving any heavy boxes or equipment to a new office location, King refused, and directed a receptionist to assist.

53. A Move Matrix is the ordinary and prescribed procedure followed when an employee is being moved from one location to another. A Move Matrix directs EMS to move all the office equipment, including making sure that a computer and any other equipment would be moved/or installed in the new office location.

54. King and Aquilina informed Plaintiff that she needed to be out of the office in the Blind Rehab section by July 5, 2016 even though they knew Plaintiff had scheduled/approved leave and would not be returning to the office until July 5, 2016.

55. King and Aquilina informed Plaintiff that Blind Rehab would be moving into the space on July 7, 2016, which was untrue.

56. Plaintiff reported this illicit move to the Union President, Darlene Estell. However, King prefabricated the reason why Plaintiff was being moved from the CARES Tower office space.

57. King claimed that Blind Rehab had requested the space, which was untrue.

58. King claimed that Blind Rehab requested space "for computer training," which was untrue.

59. If Blind Rehab had requested space for computer training, there was a larger room at the end of the hall, in Blind Rehab, also on lend to Social Work Service that was occupied by

two social workers and two social worker students/interns, already equipped with four computers, a fax line, and printer. These employees are much younger than Plaintiff.

60. Further, there was a second larger office than Plaintiff's, close to the Chief of Blind Rehab's office, that was occupied by another social worker who also was younger than Plaintiff.

61. Additionally, Plaintiff's single space office was close to two other single office spaces utilized by Patient Advocates. The Patient Advocate office space is also "on lend from Blind Rehab." However, these offices were not chosen for Plaintiff to relocate.

62. On June 16, 2016, Plaintiff spoke with Chief of Blind Rehab, Diane Peters, who denied requesting Plaintiff's office space.

63. Peters stated that King called her on the phone and asked her if she needed more space in Blind Rehab. Peters replied "We could always use more space." Then, King offered Peters Kaminsky's office. Peters accepted not knowing any of the circumstances of why King was offering it to her.

64. Plaintiff was forced to move to two different cubicles within a one-month period.

65. The small cubicles to which Plaintiff was reassigned do not meet the reasonable accommodation for physical disability that the prior office met.

66. It took several months (more than one year) to have an appropriate sit-to-stand desk installed in the small cubicle space. When it was finally installed, it did not operate correctly. Plaintiff sent numerous emails to King. All the emails were ignored.

67. On June 23, 2016, King reprimanded Plaintiff for restoring a Veteran to the VA Contract Home Hospice benefit when a community hospice agency incorrectly and without the

Veteran's consent, removed the Veteran from the VA Contract Home Hospice benefit and assigned him to use his Medicare Benefit.

68. This is an improper move.  When a Veteran is placed on VA Contract Home Hospice the community hospice agency does not have the right to remove a Veteran from that benefit. Only the Veteran can choose his/her payor source for the Home Hospice benefit. The Veteran asked Plaintiff to restore him to the VA Home Hospice Contract benefit.

69. King again asserted that all Veterans who had Medicare or a Third Party Insurance would be required to use that benefit; would be prohibited from using the VA Contract Home Hospice Benefit which provides 100% coverage, including placement in a VA contract nursing home, should that become necessary, and with no limitations.

70. On July 18, 2016, King arbitrarily changed Plaintiff's Tour of Duty from 7:00 AM to 3:30 PM to 8:00 AM to 4:30 PM.

71. Plaintiff had this Tour of Duty for the previous 12 years in Social Work Service; and had the same Tour of Duty the previous 3 years prior to her transfer to Social Work Service – a total of 15 years.

72. King stated that the reason she changed Plaintiff's Tour of Duty was that no one in Management was available at those hours, which was false.

73. A supervisor (Jeff Sedlak) started at 7:00 AM in the Social Work office; two clerks started at 7:00 AM; all three of these individuals are younger than Plaintiff. Further, King who is their direct supervisor would not be in the office until 8:00 AM.

74. There are other Social Workers in the community who have Tours of Duty other than 8:00 AM to 4:30 PM.

75. Plaintiff informed King, Aquilina and Robin Horn, ELR Specialist, that King's actions were hostile and punitive.

76. No one in Human Resources Management or the Section of Employee Labor Relations responded to Plaintiff's email.

77. Both the Chief of ELR and his Specialist Horn were aware of Plaintiff's request for assistance from Management to alleviate the situation.

78. On May 22, 2017, King, issued a template Home Hospice Follow-Up note to Plaintiff's coworker, Jill Dunmire-Saddiq, that amounted to a de facto performance evaluation of the Plaintiff's position and work performance. The practice of issuing such a template to a non-managerial coworker was a new and unusual development.

79. On or about June 22, 2017, Plaintiff was informed by a colleague that in a recent conversation with another social worker, who is very close friends with King, the other social worker stated to her: "Don't you think it was time for you to move on and let the other younger social worker take over?"

80. On June 26, 2017, Plaintiff was assigned to park her government vehicle in Parma, Ohio, even though the vehicle is officially assigned to Akron, Ohio, more than forty (40) miles away.

81. Plaintiff was informed that no parking space for her government vehicle was available in Akron, even though it had always been previously parked in Akron for seven years.

82. On July 31, 2017, King removed Plaintiff from her clinical position by a phone call, telling her that she could no longer contact any Veterans or Veteran families on her hospice list; she also told Plaintiff that she would no longer have access to CPRS to document visits to the Veterans.

83. In August 2017, King stated that she was going to detail Plaintiff to food service or clerical work for the month of August.

84. For the entire month of August 2017, King assigned Plaintiff to copying and stapling when she had three administrative clerks and a receptionist, any of whom could have completed these tasks.

## COUNT I
### (Disability Discrimination, 29 U.S.C. § 791, et seq.)

85. Plaintiff reincorporates by reference the allegations set forth above as if fully rewritten herein.

86. The Agency is an executive agency as contemplated by 29 U.S.C. § 794(a).

87. Plaintiff is an employee of the Agency.

88. Plaintiff has a disability as defined by 29 U.S.C. § 705(9) and 42 U.S.C. § 12102(1) including a spinal cord injury and severe nerve damage in her back and right leg.

89. Plaintiff's disability affects the major life activities of performing manual tasks, walking, standing, lifting, bending, and working as defined by 29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102(2).

90. Plaintiff is a qualified individual with a disability who can perform the essential functions of her job with or without reasonable accommodations.

91. The Agency unlawfully discriminated against Plaintiff because of her disabilities when it treated Plaintiff differently than employees without disabilities by removing Plaintiff from her position, verbally harassing Plaintiff, assigning Plaintiff inappropriate projects and tasks, removing Plaintiff from her office to an office that did not meet the reasonable accommodation for her physical disability, changing Plaintiff's tour of duty, refusing to allow comp time, denying Plaintiff's requests for accommodations, refusing to grant

FMLA leave, forcing Plaintiff to take Annual Leave, reprimanding Plaintiff without cause, and attempting to force Plaintiff to retire.

92. Defendant's conduct was intentional, willful, and taken in reckless disregard of Plaintiff's rights.

93. The Agency's stated and forthcoming reasons are false and are pretext for unlawful discrimination.

94. Plaintiff has suffered damages, including emotional distress, pain and suffering, as a result of the Agency's unlawful acts.

95. WHEREFORE, Plaintiff requests that this Court award her compensatory damages of $1,000,000.00, punitive damages of $500,000.00, injunctive relief, appropriate equitable relief, reinstatement, attorneys' fees, costs, and any other relief as this Court deems fair and equitable.

## COUNT II
### (Failure to Accommodate, 29 U.S.C. § 791, et seq.)

96. Plaintiff reincorporates by reference the allegations set forth above as if fully rewritten herein.

97. The Agency is an executive agency as contemplated by 29 U.S.C. § 794(a).

98. Plaintiff is an employee of the Agency.

99. Plaintiff has a disability as defined by 29 U.S.C. § 705(9) and 42 U.S.C. § 12102(1) including a spinal cord injury and severe nerve damage in her back and right leg.

100.     Plaintiff's disability affects the major life activities of performing manual tasks, walking, standing, lifting, bending, and working as defined by 29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102(2).

101. Plaintiff is a qualified individual with a disability who can perform the essential functions of her job with or without reasonable accommodations.

102. Plaintiff repeatedly requested reasonable accommodations, including her request for a Move Matrix, the proper installation of a functioning sit-to-stand desk, and ample office space to move about with her cane.

103. The Agency denied Plaintiff reasonable accommodations and failed to engage in the interactive process.

104. Defendant's conduct was intentional, willful, and taken in reckless disregard of Plaintiff's rights.

105. Plaintiff has suffered damages, including emotional distress, pain and suffering, as a result of the Agency's unlawful acts.

106. WHEREFORE, Plaintiff requests that this Court award her compensatory damages of $1,000,000.00, punitive damages of $500,000.00, injunctive relief, appropriate equitable relief, reinstatement, attorneys' fees, costs, and any other relief as this Court deems fair and equitable.

## COUNT III
### (Hostile Work Environment 29 U.S.C. § 791, et seq.)

107. Plaintiff reincorporates by reference the allegations set forth above as if fully rewritten herein.

108. The Agency is an executive agency as contemplated by 29 U.S.C. § 794(a).

109. Plaintiff is an employee of the Agency.

110. The Agency subjected Plaintiff to a hostile work environment by removing Plaintiff from her position, verbally harassing Plaintiff, assigning Plaintiff inappropriate projects and tasks, removing Plaintiff from her office to an office that did not meet the

reasonable accommodation for her physical disability, changing Plaintiff's tour of duty, refusing to allow comp time, denying Plaintiff's requests for accommodations, refusing to grant FMLA leave, forcing Plaintiff to take Annual Leave, reprimanding Plaintiff without cause, and attempting to force Plaintiff to retire.

111. Defendant's conduct was intentional, willful, and taken in reckless disregard of Plaintiff's rights.

112. The Agency's actions were both severe and pervasive.

113. The Agency's stated and forthcoming reasons are false and are pretext for unlawful discrimination.

114. Plaintiff has suffered damages, including emotional distress, pain and suffering, as a result of the Agency's unlawful acts.

115. WHEREFORE, Plaintiff requests that this Court award her compensatory damages of $1,000,000.00, punitive damages of $500,000.00, injunctive relief, appropriate equitable relief, reinstatement, attorneys' fees, costs, and any other relief as this Court deems fair and equitable.

## COUNT IV
### (Age Discrimination under the Age Discrimination in Employment Act)

116. Plaintiff reincorporates by reference the allegations set forth above as if fully rewritten herein.

117. Plaintiff is a member of the statutorily-protected class as she was at least forty years old at the time of the alleged discrimination.

118. Defendant subjected Plaintiff to adverse employment actions (i.e. removing Plaintiff from her position, verbally harassing Plaintiff, assigning Plaintiff inappropriate projects and tasks, removing Plaintiff from her office to an office that did not meet the

reasonable accommodation for her physical disability, changing Plaintiff's tour of duty, refusing to allow comp time, denying Plaintiff's requests for accommodations, refusing to grant FMLA leave, forcing Plaintiff to take Annual Leave, reprimanding Plaintiff without cause, and attempting to force Plaintiff to retire).

119. Defendant's conduct was intentional, willful, and taken in reckless disregard of Plaintiff's rights.

120. Defendant discriminated against Plaintiff because of her age.

121. Plaintiff is qualified for her job.

122. Plaintiff has suffered damages, including emotional distress, pain and suffering, as a result of the Agency's unlawful acts.

123. WHEREFORE, Plaintiff requests that this Court award her compensatory damages of $1,000,000.00, punitive damages of $500,000.00, injunctive relief, appropriate equitable relief, reinstatement, attorneys' fees, costs, and any other relief as this Court deems fair and equitable.

### COUNT V
### (Retaliation 29 U.S.C. § 791, et seq.)

124. Plaintiff reincorporates by reference the allegations set forth above as if fully rewritten herein.

125. The Agency is an executive agency as contemplated by 29 U.S.C. § 794(a).

126. Plaintiff is an employee of the Agency.

127. Plaintiff engaged in protected activity under The Rehabilitation Act when she complained to the Agency and the EEO that she was being discriminated against and harassed on the basis of her disability.

128. The Agency had knowledge of Plaintiff's protected activity, including her EEO complaint.

129. The Agency took adverse actions against Plaintiff after learning of her protected activity by removing Plaintiff from her clinical position, removing Plaintiff from all clinical work, relocating Plaintiff's parking space, reassigning Plaintiff's government vehicle to another employee, denying Plaintiff's repeated requests for accommodations, reassigning Plaintiff to another location, and assigning Plaintiff to do menial tasks.

130. There is a causal connection between the protected activity and the adverse employment actions.

131. Defendant's conduct was intentional, willful, and taken in reckless disregard of Plaintiff's rights.

132. The Agency's stated and forthcoming reasons are false and are pretext for unlawful retaliation.

133. Plaintiff has suffered damages, including emotional distress, pain and suffering, as a result of the Agency's unlawful retaliation.

134. WHEREFORE, Plaintiff requests that this Court award her compensatory damages of $1,000,000.00, punitive damages of $500,000.00, injunctive relief, appropriate equitable relief, reinstatement, attorneys' fees, costs, and any other relief as this Court deems fair and equitable.

## COUNT VI
### (Retaliation under the ADEA)

135. Plaintiff reincorporates by reference the allegations set forth above as if fully rewritten herein.

136. Plaintiff brings this claim pursuant to the Age Discrimination in Employment Act of 1967, as amended.

137. Plaintiff is an employee of Defendant.

138. Plaintiff engaged in protected activity under the ADEA when she complained to the Agency and the EEO that she was being discriminated against and harassed on the basis of her age.

139. The Agency had knowledge of Plaintiff's protected activity, including her EEO complaint.

140. The Agency took adverse actions against Plaintiff after learning of her protected activity by removing Plaintiff from her clinical position, removing Plaintiff from all clinical work, relocating Plaintiff's parking space, reassigning Plaintiff's government vehicle to another employee, denying Plaintiff's repeated requests for accommodations, reassigning Plaintiff to another location, and assigning Plaintiff to do menial tasks.

141. There is a causal connection between the protected activity and the adverse employment actions.

142. Defendant's conduct was intentional, willful, and taken in reckless disregard of Plaintiff's rights.

143. The Agency's stated and forthcoming reasons are false and are pretext for unlawful retaliation.

144. Plaintiff has suffered damages, including emotional distress, pain and suffering, as a result of the Agency's unlawful retaliation.

145. WHEREFORE, Plaintiff requests that this Court award her compensatory damages of $1,000,000.00, punitive damages of $500,000.00, injunctive relief,

appropriate equitable relief, reinstatement, attorneys' fees, costs, and any other relief as this Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully submitted,
**EDWARD L. GILBERT CO., LPA**

 /s/  Edward L. Gilbert
Edward L. Gilbert (0014544)
One Cascade Plaza, Suite 825
Akron, Ohio 44308
(330) 376-8855 Telephone
(330) 376-8857 Fax
egilbert@edwardlgilbert.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed on January 4, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Edward L. Gilbert
Edward L. Gilbert (0014544)